# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ZONTA V. WEST, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>JIM FARRIS, )<br>)<br>Respondent. ) | No. CIV-13-17-M |

## REPORT AND RECOMMENDATION

Petitioner Zonta V. West, a state prisoner appearing *pro se*, has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, ECF No. 1 (Petition) challenging the constitutionality of his state court conviction. Respondent has filed his Response to Petition for Writ of Habeas Corpus, ECF No. 12 (Response). Petitioner has not replied. For the reasons set forth below, it is recommended that the Petition be **DENIED**.

## I. Relevant Case History and Issues Presented

On July 28, 2010, Petitioner was convicted after a jury trial in the District Court of Oklahoma County, State of Oklahoma, in Case No. CF-08-7078, of first degree felony murder. Petitioner was sentenced to life imprisonment with the possibility of parole.

Petitioner appealed his conviction and sentence to the Oklahoma Court of Criminal Appeals (OCCA) (*See* Response, Ex. 3 (Summary Opinion of the OCCA)). The OCCA affirmed Petitioner's conviction and sentence on January 13, 2012 (*id.*).

Petitioner filed this habeas action raising the same five grounds for relief he presented to the OCCA: (1) whether trial counsel was ineffective in failing to ensure the presence of an alibi witness to testify at trial; in opening the door to harmful evidence; and in failing to understand the law relating to admission of evidence;[1] (2) whether the State's repeated elicitation from a co-defendant of a statement made by Larry Stelly, which implicated Petitioner in the fatal shooting for which he was convicted, violated Petitioner's rights under the confrontation clause and the due process clause of the constitution; (3) whether the erroneous admission of the improper hearsay testimony of Larry Stelly under the co-conspirator exception to the hearsay rule violated Petitioner's right to confront witnesses and his right to due process and to a fair trial under the state and federal constitutions; (4) whether the evidence presented at trial, which included

---

[1] The third part of the ineffective assistance of counsel issue is stated as whether counsel were ineffective in failing to impeach co-defendants with threatening letters. The actual issue as raised before the OCCA however, challenges counsel's effectiveness based on his failure to understand the law relating to admission of evidence rebutting an allegation of recent fabrication (Response Ex. 1). There is no explanation as to why appellate counsel fashioned the issue as a failure to impeach the co-defendants with threatening letters. Apparently, Petitioner simply relied on his appellate attorney's brief before the OCCA in fashioning his grounds for habeas relief. This Court has considered the issue as it was actually raised on direct appeal and considered by the OCCA.

uncorroborated testimony of his accomplices in violation of the federal and state constitutions, was sufficient to support the jury's verdict; and (5) whether cumulative error warrants a new trial (Response Ex. 3 at 1-2).

## II. The Evidence Presented at Trial

Petitioner's conviction arises from his commission of an armed robbery which resulted in the death of Jeremy Moore, a pizza delivery man. Evidence adduced at trial includes the testimony of two co-defendants, Rondell Griffin and Christian Holder, both of whom had been tried separately and convicted for their participation in the robbery and murder before Petitioner came to trial. Following is a summation of the evidence primarily from the testimony of Holder and Griffin (Response, Ex. 6 (Relevant Portions of the Trial Transcript)).

Petitioner and Griffin were together after school on the evening of November 7, 2008, at Petitioner's apartment where they developed a plan to rob a pizza delivery person. Griffin used Petitioner's home telephone to call a Papa John's Pizza. He placed an order for a pizza to be delivered to the Lantana apartment complex across the street from Petitioner's apartment complex. The Lantana apartment complex had very few renters and was almost deserted. Griffin gave Papa John's a call-back telephone number that actually belonged to a third friend, Christian Holder, though Griffin testified that he had intended to

3

change one digit of the number so that the call-back number would actually be a fake number.

After Griffin placed the pizza order, he and Petitioner left Petitioner's apartment and went to visit Petitioner's girlfriend who lived in the same apartment complex as Petitioner. After a brief stay, the Petitioner and Griffin left and met up with Holder, explained their plan to rob a pizza delivery person, and asked him to join them in the proposed robbery. Holder agreed, and the three walked through a hole in the fence separating Petitioner's apartment complex from the Lantana apartment complex and waited on the sidewalk for the pizza to be delivered.

Originally, the three had planned to drag the pizza delivery person into an empty breezeway of the Lantana apartment complex, assault him and steal his money. But before the pizza was delivered, yet another friend, Larry Stelly, walked by, and the three men told Stelly about their plan. Stelly showed the three men a gun. Petitioner immediately asked to borrow the gun, and he and Stelly moved away from the others. While Stelly and Petitioner were discussing the gun, Moore arrived at the Lantana apartments with the pizza. Griffin attempted to get into the breezeway while Holder talked to Moore in an attempt to stall. Griffin could not get into the breezeway, however, so he returned to where the victim and Holder were standing. Petitioner joined the trio, pointed the

gun he had just borrowed from Stelly at Moore and demanded money. When Petitioner's second demand for money did not produce the desired result, Petitioner shot and killed Moore. Petitioner ran from the scene followed by Griffin, who paused to pick up the pizza warmer bag, and Holder who had the pizza boxes. The three went to Holder's house after the shooting and ate pizza. Before he left Holder's house, Griffin threw the pizza warming bag over Holder's back fence. A few nights later, Griffin retrieved the pizza warming bag and hid it in a lawn mower bag in his own backyard shed where it was eventually discovered by police.

During their investigation, the police subpoenaed the phone records from Papa John's and learned that the telephone call for the pizza order originated at Petitioner's apartment. Petitioner eventually admitted that he had been with Griffin and Holder, that he had allowed Griffin to place the call to Papa John's, and that he knew about the plan to rob the victim. He did not admit, however, that he was involved in the robbery and murder. Rather, he told police that he had gone to his girlfriend's apartment after Griffin and Holder left to meet the pizza delivery person at the Lantana apartment complex and had remained there during the robbery/murder.[2]

---

[2] Response, Ex. 6 at 2-9; 10-14; 18-30.

### III. Standard of Review

The five grounds for relief raised by Petitioner are properly exhausted and subject to review under the standards set forth in the Anti-terrorism and Effective Death Penalty act of 1996 (AEDPA). Under AEDPA, this Court may grant a Petitioner habeas relief only if the State court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d)(1)-(2). Under this standard, judicial review is directed to the result of the state appellate court's decision, not its reasoning. *See Gipson v. Jordan*, 376 F.3d 1193, 1197 (10th Cir. 2004) ("[W]e defer to the [state court's] decision unless we conclude that its result---not its rationale---is 'legally or factually unreasonable'").

Whether the law is clearly established is a threshold inquiry. *See House v. Hatch*, 527 F.3d 1010, 1017-1018 (10th Cir. 2008). The absence of clearly established federal law is dispositive of the § 2254(d)(1) analysis. *Id.* at 1017. Thus, only if the court determines that the law is clearly established does it proceed to determine whether the state court decision is either contrary to or an unreasonable application of that law. *Id.* at 1018.

A state court's determination is contrary to clearly established federal law if it applies a rule that contradicts the law set forth in Supreme Court cases or confronts a set of facts that are materially indistinguishable from a Supreme Court decision, but arrives at a different result. *Williams v. Taylor*, 529 U. S. 362, 405-406 (2000). "A legal principle is 'clearly established' within the meaning of this provision only when it is embodied in a holding of [the United States Supreme Court.]" *Thaler v. Haynes*, 531 U.S. 43, 47 (2010).

A state court's determination involves an unreasonable application of clearly established federal law if it identifies the correct governing legal principle from Supreme Court decisions, but unreasonably applies that principle to the facts in the Petitioner's case. *Williams*, 529 U.S. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 411.

IV. **Analysis**

A. **Ground One: Ineffective Assistance of Counsel**

In the appellate brief submitted to the OCCA, Petitioner challenged the effectiveness of his trial counsel, alleging that counsel had failed to produce an alibi witness; failed to request an alibi instruction; and failed to properly cross-

examine Petitioner's co-defendants, thereby opening the door to the admission of otherwise inadmissible prior consistent statements of the co-defendants made to third parties.

In addition to his appellate brief, Petitioner's appellate counsel tendered for filing, pursuant to Rule 3.11(B)(3)(b) of the Rules of the Oklahoma Court of Criminal Appeals, a "Notice of Extra-Record Evidence Supporting Proposition I of the Brief of Appellant or, alternatively, Rule 3.11(B)(3)(b) Motion to Supplement Direct Appeal Record or Request for an Evidentiary Hearing." The OCCA accepted this document for filing, considered the evidence attached to it, but denied the request for evidentiary hearing on the issue of trial counsel's alleged ineffectiveness (Response, Ex. 3 at 1 n. 1).

The law applicable to the review of grounds for relief based on ineffective assistance of counsel was clearly established in *Strickland v. Washington*, 466 U.S. 668, 690–91 (1984). In *Strickland* the Court held that to prevail on a claim based on allegedly ineffective assistance of counsel, a petitioner must show that (1) "counsel's representation fell below an objective standard of reasonableness," and (2) there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 694.

This Court's review of the OCCA's determination of Petitioner's ineffective assistance of counsel claim is subject to the deference due all state court

decisions in the context of federal habeas review. When a state court's decision includes review of ineffective assistance of counsel claims, the decision is accorded double deference:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Harrington v. Richter*, ___U.S. ___, 131 S.Ct. 770, 785 (2011) (internal quotations and citation omitted). The Supreme Court emphasized that it is the result of the state court's decision which must "be evaluated according to the precedents of this Court." *Id.* at 786.

State appellate courts are given considerable latitude in their analyses of issues to which this Court applies a "doubly deferential judicial review." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). This Court must, therefore, assess the reasonableness of the OCCA's application of the *Strickland* standard. *Harrington*, 131 S. Ct. at 785.

### 1. Counsels' Failure to Produce the Alibi Witness and Failure to Request an Alibi Instruction

Petitioner's alibi was that he had been with his girlfriend, Ashley Tucker, while his two co-defendants were robbing and shooting Moore. The record supports Petitioner's contention that trial counsel intended to call Tucker as a witness. When it came time to call Tucker to testify, however, she could not be found. The defense was given an hour to find Tucker, but she was not located within the allotted time. When court reconvened, the defense rested without further reference to Tucker (Response, Ex. 6 at 65-67).

The OCCA concluded that trial counsel was not ineffective in resting without calling Tucker or in failing to request an alibi instruction. In reaching its conclusion, the OCCA considered and relied on the affidavits of Petitioner's two attorneys as well as the police report of Tucker's formal statement.[3] In reviewing the Rule 3.11(B)(3)(b) motion and attached materials, the OCCA stated that it would assess whether Petitioner had established "by clear and convincing evidence" that a "strong possibility that counsel was ineffective for failing to aggressively pursue this alibi defense and use the evidence raised in the motion" (Response Ex. 3 at 2). The OCCA relied on *Simpson v. State*, 230 P.3d 888, 905-906 (Okla. Crim. App. 2010) for the standard of review used to evaluate

---

[3] The documents referenced by the OCCA are attached to the OCCA's Summary Opinion (Response, Ex. 12-4) as attachments A-C.

counsel's effectiveness. In *Simpson*, the OCCA made it clear that the standard under which it reviews claims regarding alleged ineffective assistance of counsel is less burdensome than the standard required under the first prong of the standard set forth in *Strickland*. The Tenth Circuit Court of Appeals has accepted the OCCA's explanation of its standard of review and has determined that a decision of the OCCA regarding ineffective assistance of counsel claims is entitled to the deference discussed above. *See Lott v. Trammell*, 705 F.3d 1167, 1211-1213 (10th Cir. 2013).

In the instant case, the OCCA stated:

> We find that the motion evidence does not show a strong possibility that counsel was ineffective, but rather illuminates that counsel's decision not to pursue Tucker after she failed to appear for a defense subpoena was strategic; we will not second guess trial strategy

(Response Ex. 3 at 3). In further support of its decision, the OCCA noted that Michael Bush, one of Petitioner's attorneys, stated in his Affidavit, "We decided to go forward without [Tucker's testimony] because through the videotape interview [of Petitioner] the jury had heard [Petitioner's] alibi" (Response, Ex. 3, Att. C). Finally, the OCCA noted that Tucker's statement to police was inconsistent with the alibi statement made by Petitioner (Response, Ex. 3 at 3).

The OCCA also considered the failure to request an alibi instruction. Based on the "lack of persuasive evidence supporting [Petitioner's] alibi defense along with the instructions provided to the jury, including the evidence of exculpatory statement instruction," the OCCA determined that Petitioner had not demonstrated that counsel was ineffective in failing to request an alibi instruction (Response, Ex. 3 at 3-4).

With regard to the failure to procure Tucker's testimony and to request an alibi instruction, the OCCA's decision is neither contrary to, nor an unreasonable application of Supreme Court law.

### 2. Failure to Preclude Admission of Harmful Testimony because of Counsel's Failure to Understand the Law Relating to Admission of Prior Consistent Statements

Petitioner contends that his trial counsel was ineffective in questioning co-defendants Holder and Griffin concerning the benefit the two co-defendants hoped to gain by testifying against Petitioner. The trial court found that this line of questioning opened the door to allow the admission of the hearsay testimony of Colton Swenn, Cory Dotson and Jesse Sullivan, all of whom testified that Holder had made statements shortly after the robbery/murder which implicated Petitioner in the crime.

Okla. Stat. tit. 12, §2801(B)(1)(b) allows admission of prior consistent out-of-court statements in face of an implication of recent fabrication. Under

Oklahoma law, questions suggesting that a witness is lying to obtain beneficial treatment from the State are sufficient to allow the prosecutor to introduce prior consistent statements. See *DeLozier v. State*, 991 P.2d 22, 27 (Okla. Crim. App. 1998).

The OCCA concluded that Petitioner had demonstrated that trial counsel "misunderstood the law delineating when prior consistent statements may be admitted to bolster witness testimony" (Response Ex. 3 at 4). But the OCCA determined that Petitioner could not demonstrate prejudice stemming from the error:

> We recognize that even if counsel did understand the law, he would have exploited the fact that [Petitioner's] co-defendants were expecting lesser sentences in exchange for their testimony against West. Furthermore, counsel was permitted to recall Holder and Griffin in the defense case. Though limited to direct examination rather than cross, counsel was given an overnight continuance to develop his questions. Counsel was also provided leeway during trial to pursue all avenues of questioning that he desired. Because [Petitioner] did not suffer prejudice, this Court will not find ineffective assistance of Counsel

(Response, Ex. 3 at 4).

The OCCA's application of *Strickland's* prejudice requirement is neither contrary to, nor an unreasonable application of *Strickland*. Accordingly, Petitioner is not entitled to habeas relief for his claims of ineffective assistance of counsel.

13

## B. Grounds Two and Three: Hearsay Statement of Larry Stelly

In Ground Two, Petitioner contends that he was denied his constitutional rights under the confrontation clause because, in response to questions asked of Holder by the State, Holder twice repeated an inculpatory, non-testimonial statement attributed to Larry Stelly, a non-testifying co-defendant. The State asked Holder what Stelly said when the two met in the street after the shooting. Holder testified that Stelly had asked, "why Zonta shot him."

In Ground Three, Petitioner challenges the same statements as inadmissible hearsay, arguing that the statements could not be admitted under the co-conspirator exception to the rule against admission of hearsay evidence.

The trial court agreed with defense counsel that the statements in question were inadmissible hearsay, and immediately admonished the jury to disregard the testimony. Therefore, the hearsay statements were never actually admitted into evidence. On appeal, the OCCA agreed with Petitioner that the statement was inadmissible hearsay. The OCCA went on to consider the impact of the statements and determined they were harmless:

> the prosecutor did not intentionally elicit this testimony, and both times the statement was uttered, the court issued an immediate admonishment instructing the jury to ignore the statement. Additionally, West had already been implicated as the shooter by both Griffin and Holder. We find that the statement did not impact the

> outcome of the proceedings and was harmless beyond a reasonable doubt

(Response, Ex. 3 at 5-6) (citations and quotations omitted).

As a federal court sitting in collateral review of a state court's work, this Court may not reverse the OCCA's determination that a constitutional error was harmless beyond a reasonable doubt unless the Court is sure that the error had a " 'substantial and injurious effect' on the jury's decision." *Banks v. Workman*, 692 F.3d 1133, 1139 (10th Cir. 2012) (*citing Fry v. Pliler*, 551 U.S. 112, 119–20 (2007)). "This standard precludes reversal of a conviction on habeas unless we have a grave doubt about the effect of the error on the verdict." *Id.* (internal quotation marks omitted).

In this case, the OCCA's reasoning concerning the effect of the hearsay statements on the outcome of Petitioner's trial is sound. Because this Court does not have a grave doubt about the effect of the statements on the verdict, it is recommended that Petitioner be denied habeas relief on these grounds.

### C. Ground Four: Sufficiency of Evidence

Petitioner contends that the evidence supporting his conviction was insufficient. Although Petitioner alleges that his conviction violates the Due Process Clause of the Fourteenth Amendment, the crux of his argument is that

the evidence is insufficient under Oklahoma state law which requires that the testimony of an accomplice be corroborated:

> A conviction cannot be had upon the testimony of an accomplice unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof

Okla. Stat. tit. 22, § 742.

The standard a state court must apply when reviewing a claim challenging the sufficiency of the evidence is clearly established in *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). "[T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be . . . to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." But it is not necessary or appropriate for this court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." *Id.* at 319 (internal quotation and citation omitted). The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* The *Jackson* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to

ultimate facts." *Id.* If a defendant is found guilty of the crime charged, the jury's role as fact finder and weigher of the evidence is preserved "through a legal conclusion that upon judicial review all of the evidence is to be considered in the light most favorable to the prosecution." *Id.*

Under AEDPA, this Court must decide whether the OCCA's finding that there was sufficient evidence to support a jury's guilty verdict was contrary to or an unreasonable application of *Jackson*. *See* 28 U.S.C. § 2254(d)(1); *Spears v. Mullin*, 343 F.3d 1215, 1238-39 (10th Cir. 2003). The Supreme Court recently reiterated the difficulty a habeas Petitioner faces when asserting a ground for relief based on alleged insufficiency of the evidence:

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. And second, on habeas review, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable'

*Coleman v. Johnson*, ___ U.S. ___, 132 S.Ct. 2060, 2062 (2012) (internal quotations and citations omitted).

Regarding the sufficiency of the evidence, the OCCA determined that the testimony of Petitioner's accomplices "was sufficiently corroborated by independent record facts linking [Petitioner] to the crime" (Response, Ex. 3 at 6). Specifically, the OCCA noted that the police traced the call made to Papa John's to Petitioner's home phone; that after lying about his involvement, Petitioner admitted letting Griffin use his home phone for the purpose of setting up the robbery; that Petitioner knew details about the robbery that stemmed from the phone call; and that Petitioner knew the initial plan was to use brass knuckles to assault the pizza delivery person. The OCCA concluded:

> Considering the properly admitted accomplice testimony, there is more than sufficient evidence to support a rational trier of fact finding the essential elements of first degree murder beyond a reasonable doubt.

(Response, Ex. 3 at 6). The OCCA's conclusion that Petitioner's conviction was supported by substantial evidence is not contrary to, nor an unreasonable application of *Jackson*, and habeas relief is not warranted.

### D. Ground Five: Cumulative Error

Petitioner claims that cumulative error arising out of the claims raised in Grounds One through Four of the Petition warrant a new trial. The OCCA denied the claim stating:

> In Proposition V, West argues that cumulative error requires relief. We found no prejudice resulting from

18

> errors alleged in Proposition I, and we found the error raised in Propositions II and III was harmless. There is no cumulative error. *Brumfield v. State*, 2007 OK CR 10, ¶ 37, 155P.3d 826, 840. Proposition V is denied.

(Response, Ex. 3 at 7).

In reviewing a claim of cumulative error, a court may consider only actual errors for purposes of determining whether a due process violation has occurred. *See Le v. Mullin*, 311 F.3d 1002, 1023 (10th Cir. 2002) ([A] cumulative error analysis should evaluate only the effect of matters determined to be error, not the cumulative effect of non-errors."). In this case, the OCCA found only one error—the jury's brief exposure to an inadmissible hearsay statement—and that error was deemed harmless. Moreover, this Court has determined that the error had no substantial injurious effect on the outcome of the trial. Because there is not cumulative error, it is therefore recommended that habeas relief be denied on this ground.

## RECOMMENDATION

It is recommended that Petitioner's Petition for Writ of Habeas Corpus, **ECF No. 1**, be **DENIED.**

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file an objection to this Report and Recommendation with the Clerk of this Court by **November 22, 2013**, in

accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

## **STATUS OF REFERRAL**

This Report and Recommendation terminates the referral by the District Judge in this matter.

**ENTERED** on November 5, 2013.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE